# ORANGE COUNTY.

## MARCH TERM, 1874.

[CONTINUED FROM VOL. 46, PAGE 772.]

### SAMUEL C. CLEMENT *v.* L. F. HALE.

*Gen. Sts. ch.* 84, § 58. *Appointment of Collector of Taxes by Selectmen in Case of Disability of Collector by Removal.*
*Gen. Sts. ch.* 83, § 27. *Notice by Listers to Persons Assessed.*

Where the collector of taxes has permanently removed from the town, the selectmen have authority under § 58, ch. 84, of the Gen. Sts., to appoint a person to collect and pay over to the proper authority all unpaid taxes.

It is not the duty of the listers, under § 27, ch. 83, of the Gen. Sts., to notify persons whom they assess for bank stock, of the sum in which they are assessed, and of the time and place when and where they will hear those who feel themselves aggrieved by such assessment. Hence, the want of such notice, or a misunderstanding on the part of one of the listers of a claim by a person thus assessed that his stock should be exempt by reason of debts due from him, will not vitiate his list.

TRESPASS for a yoke of oxen. The defendant pleaded the general issue, and a special plea in justification as tax collector of the town of Corinth, under rate-bills and warrants for the collection of a state, a state school, and a town tax, assessed against the plaintiff on the list of 1869. Said special plea contained the requisite allegations of the liability of the plaintiff to pay taxes in said town, and of the raising and assessment of said taxes, and of the making and issuing of said rate-bills and warrants, and alleged that said rate-bills and warrants were duly placed in the hands of Joseph H. Gilman, the constable and collector of said town, for collection'; that said Gilman did not collect said taxes of the plaintiff, but that said rate-bills remained in his hands uncollected a long time, to wit, until the 26th of

March, 1870, at which time there were certain sums due from the plaintiff on said taxes; that on that day the said Gilman became " disabled from discharging his duties as collector, and at his request, the selectmen of said town of Corinth certified the same on the back of said warrants, and there being no other constable in said town, the said selectmen appointed this defendant to collect and pay over to the proper authorities, all unpaid taxes thereon, and put into the hands of the defendant said rate-bills and warrants," whereupon the defendant, &c.

The plaintiff filed two replications to said special plea. The first admitted all the allegations of the plea except the disability of Gilman, which it traversed, and alleged that he " did not become disabled from discharging his duties as such collector, by reason of sickness or otherwise, as the statute in such cases has provided," and concluded to the country, whereon issue was joined. The second admitted the raising and assessment of said taxes, and the making and issuing of said rate-bills and warrants, but alleged that on the first day of April, 1869, one of the listers of said town called upon the plaintiff for his list of personal property; that thereupon the plaintiff gave said lister a true list of his taxable property, together with the amount of debts he was then owing; that the property of the plaintiff thus subject to being listed, amounted to the sum of $3,648; that he owned bank stock in the Orange County National Bank at Chelsea, to the amount of $2,000, and that he was then owing debts to the amount of $6,000; that the said lister accepted said list so given him by the plaintiff, as and for a true list of all the plaintiff's taxable property, together with the amount that the plaintiff was so owing; that the plaintiff was in fact owing on the first day of said April, more than the amount of all his personal property including his bank stock; and that neither of the listers in said town in any way notified the plaintiff that he was assessed over and above what he was owing, either for money on hand, debts due, bank stock, or other property; that in making up the list in the year 1869, the listers entered upon said list to the plaintiff, without his knowledge, under the head of personal property, as follows:

Clement *v.* Hale.

"Full value of all taxable property after deducting the just debts owed, $2,000," as and for the list of the plaintiff's personal property for the year 1869, without specifying what said $2,000 was made up of; that the amount of real estate of the plaintiff for said year 1869, as it stood in the list, was $2,478, which, together with the said $2,000, made the sum of $4,478, being the sum in the grand list of the plaintiff upon which said taxes, as specified and set forth in said plea, were made out and assessed, when in fact the plaintiff had no personal property upon which he ought to have been assessed or taxed, over and above what he was owing; and concluded with a verification, and treated as traversed. Trial by the court, December term, 1873, PECK, J., presiding. The taking was admitted. No question was raised in relation to anything except the legality of the appointment of the defendant as collector, and the legality of the list of the plaintiff upon which said taxes were assessed. It was admitted that said Gilman was duly elected constable and collector of the town of Corinth, at the annual March meeting in 1869, and that the taxes were made out and put into his hands for collection, and remained in his hands without being collected until the 26th day of March, 1870, when he permanently removed from said town, at which time there was no other constable or collector therein; that thereupon the selectmen of said town appointed the defendant to collect the taxes so remaining uncollected, and pursuant to such appointment, the defendant took the rate-bills, with warrants attached, and proceeded to collect said taxes, and took the oxen in question, and regularly disposed of them by virtue thereof, to satisfy said taxes against the plaintiff.

It appeared that on the first day of April, 1869, Hale Davis, one of the listers of said town for that year, called upon the plaintiff for his list of personal property; that the plaintiff then gave him his list of personal property, amounting to $3,648, not including bank stock, which said lister, in the plaintiff's presence, wrote down in a book that he carried for that purpose. The plaintiff at the same time informed said lister that he was owing the sum of $6,000, and claimed that his personal property should be deducted from his list, on account of said indebtedness. And

the said lister then made a minute upon his book under said list of personal property, in these words: " Sixty hundred offset." It appeared from the list of said town for the year 1869, and from other evidence, that the listers did deduct from the plaintiff's list, by reason of debts owing, all the plaintiff's personal property except his bank stock, which stood in the list at $2,000, but was not designated as bank stock in the list, and the list did not show what it was made up of, but the said Davis testified that it was for the bank stock, and the plaintiff's counsel so claimed, and the court so found. It appeared from the list of the previous year, that the plaintiff was assessed that year for $2,000 bank stock, and for money on hand and debts due, the sum of $1,500. It did not appear that in 1869 the listers, or any of them, notified the plaintiff that he was assessed for money on hand, debts due, stock in trade, or of the amount of his assessment, or the time and place when and where they would hear him if he felt aggrieved by his assessment, except as hereafter stated.

It appeared that at the time said Davis took the list of the plaintiff's personal property as aforesaid, they had some conversation about bank stock. The plaintiff inquired of Davis, at what price they were going to put it in the list, saying he had $2,000 bank stock in Chelsea bank, which he would find at the town clerk's office, and claimed it was put in too high before, and said he thought it ought not to go in at more than two thirds the *par* value, saying that some towns put it in at two thirds *par* value. Davis did not call on plaintiff for a list of his bank stock, expecting to get a list of that at the town clerk's office, as he knew he had the bank stock, and knew that it was set in the list the year before, and not deducted from the plaintiff's list that year on account of any indebtedness.

It was conceded by the counsel that this same stock was set in the list to the plaintiff the year before, at the same sum as in 1869—$2,000. Davis took no minute or list of the bank stock on that occasion. The plaintiff and Davis had some conversation about the plaintiff's alleged indebtedness of $6,000. Davis asked him who he owed the debts to, and the plaintiff refused to

tell, saying he was not obliged to tell. In reply to what the plaintiff said about having his stock go in at two thirds, or less than par value, Davis told him he did not know about that. Before they separated on that occasion, Davis indicated to the plaintiff that he was satisfied to have the plaintiff's indebtedness offset to the extent of the articles of personal property, aside from the bank stock, but did not assent to anything beyond that, and told the plaintiff that the listers had appointed a day (then to come) when they were to meet at the town clerk's office in that town, to look over the list, and told him what day it was, and asked him to come down there at that time.

It appeared that the listers had fixed on a day to meet, as Davis stated to the plaintiff, and that they did meet at the time and place named, on that business, and the plaintiff did not appear, although he came near, and was at a store across the street at that time, a few rods from the town clerk's office, when the listers met. This meeting of the listers was for the purpose of making up the list. The plaintiff did not know of the decision of the listers in relation to his list, till soon after the list was made out.

The court found that the plaintiff was owing debts to the amount of $6,000, and more than enough to cover all his personal property, including bank stock ; that the said $2,000 standing in the plaintiff's list, was for his bank stock, and that the lister who took his list, did not, from what transpired between them, understand that the plaintiff claimed to him to have his bank stock exempted from his list as personal property, in consequence of his said indebtedness, but the plaintiff understood it otherwise.

The plaintiff claimed that the reason why the bank stock was not taken out of his list was, because the listers understood that bank stock could not be taken out for debts ; but the court did not find it proved that such was the reason. It was not claimed by the plaintiff's counsel that there was any fraud on the part of the listers, or any of them ; but, on the contrary, it was conceded that they intended nothing wrong, but mistook the law.

The plaintiff's list for 1869, was made up of real estate valued at $2,468, and the said bank stock, $2,000, and one poll, making in all $4,678.

The court rendered judgment for the defendant to recover his costs ; to which the plaintiff excepted.

*Wm. & S. B. Hebard*, for the plaintiff.

The selectmen had no power to make the appointment. The constable had removed out of town, and that left the office vacant, and a new election should have been had. Gen. Sts. 536, §§ 53, 54, 55. There is nothing *equivocal* or doubtful about the phraseology or meaning of the statute. Taking the three sections together, there can be no doubt about the true construction of the statute. Moving out of town creates a *vacancy*. A *vacancy* can only be filled by calling a special meeting of the voters of the town. In case a special meeting is not called, then the office remains *vacant* till the annual meeting.

It is claimed that the selectmen had power to make this appointment, by virtue of the 58th section of the same statute. This section applies to a case of disability, and not to a case where there is a vacancy. The selectmen in this case have no power, only on request of the collector, which cannot be in case of a vacancy, as in that case there is no collector. In case of disability by sickness or otherwise, there is no vacancy ; and in that case he is as much the collector as he was before he was disabled.

It has been, and may again be, claimed, that the expression " *disabled by sickness or otherwise*," includes a case of vacancy. The first objection to that would be, a contradiction in terms. But a greater difficulty is, that the statute has specifically provided for a case of vacancy ; and the two cases are entirely separate and distinct, and have no connection with each other. "*Disabled by sickness or otherwise*," means otherwise disabled ; and *otherwise disabled* means, disabled in a manner already enumerated, or of a like character. *Cummings* v. *Clark et als.* 15 Vt. 653. The selectmen had no judicial discretion in determining when they might make an appointment, except to decide who was a competent person. *Cummings* v. *Clark et als, supra.*

The facts detailed in the exceptions, show that the plaintiff's list was illegal.

The list is erroneous on the face of it. The lister accepted an

offset by way of debts of $6,000. The whole of his personal property, including the bank stock, is $5,648, and still the list shows the amount of taxable property, after deducting the just debts owed, to be $2,000.

*R. Farnham* and *C. W. Clarke*, for the defendant.

The only question reserved on the first part of the case is, whether a removal from town by the collector, can be treated as a *disability* under the statute, so that authority would be vested in the selectmen to appoint a collector to collect and pay over the arrearage, or balance of unpaid taxes. Gen. Sts. ch. 84, § 58.

All the necessary facts to constitute a perfect and legal appointment, under the act in question, are fully stated in the plea, and are admitted by the replication. The only fact questioned or put in issue by the replication is, that Gilman was not disabled within the meaning of the statute. Said § 58 authorises the selectmen to appoint a collector under the circumstances of this case. The word *otherwise*, made use of in this section, taken in its general sense, comprehends, and was intended to comprehend, all possible ways in which a collector may become disabled and rendered incapable of collecting the taxes. The statute is to be construed the same as though it read from sickness, or by other causes. The word is so defined by lexicographers, and the words, *other causes*, made use of in the definition, express the idea most commonly intended and conveyed by it. The words of a statute, if of common use, are to be taken in their natural, plain, obvious, and ordinary signification and import. 4 Kent. Com. 511. The evident intention of the statute, disclosed by this section and the context, is, that at all times there shall be in existence in a town, authority properly equipped to enforce the collection of taxes.

The 54th section of chapter 84, provides for an election of a collector in case of the removal, death, guardianship, &c., of the collector in office ; but it is not necessary to hold, under the whole chapter taken together, that an election under the provisions of that section, is the only means by which an immediate want can be supplied in such cases.

As to the validity of the tax, the facts found do not sustain the plaintiff's objections.

The opinion of the court was delivered by

BARRETT, J. I. As to the official authority of the defendant to collect the tax. The only question of fact in issue presented by the pleadings, is, whether the collector, Gilman, was *disabled* within the meaning of the statute that provides for the appointment, by the selectmen, of a person to collect the uncollected taxes, in cases where the collector becomes " disabled by sickness or otherwise." Gen. Sts. ch. 84, § 58. The manner of the appointment is not brought in question by the pleadings, but only the cause and occasion for the appointment, and that is limited to the single subject of disability. We accept the question the same as if it had been presented by an averment in the plea that Gilman had become disabled by *removal* from town, and that had been demurred to ; and make no further criticisms as to the omission of the cause of disability in the plea, and the insertion of " by sickness " in the traverse. Counsel need not be instructed that the legitimate scope and force of the averment of fact upon which issue is to be formed by a traverse, is not enlarged or changed by adding in the traverse words or expressions beyond, and different from, the averment. As it has been treated on the trial in both the county and the supreme courts, that the issue presented by the pleadings is, whether the removal from town constituted *disability*, such as warranted the selectmen in appointing the defendant to collect the tax of the plaintiff, so we treat it in deciding the case presented by the exceptions.

That provision of the statute was made in 1846. Previous to that, the statute did not authorize the selectmen to appoint a person to collect taxes. It only provided for supplying a substitute by an election at a special meeting of the town, when a collector had removed, or died, or been placed under guardianship, as in §§ 53, 54, ch. 83—which were the same in the Rev. Sts., and substantially in Slade's Comp. ch. 49, § 13. If no such meeting should be called, the collector chosen at the next annual or stated meeting, was to take the old tax-bill, and collect what

was due on it, the same as the former collector was authorized to
do.   Only in the cases thus provided, and in the manner thus
provided, could the taxes be collected by anybody but the col-
lector to whom the tax-bill was originally delivered.   As the
law thus stood, whatever may have been the exigency arising
upon the suspension of ability in the original collector to make
further collections, the collection of taxes must cease till a new
collector had been elected in the manner provided in §§ 53, 54.
An exigency might as well occur, rendering it needful to have a
collector at once who could act, when the collector had become
disabled by reason of removal, death, or guardianship, as when
disabled by sickness.   A person would be as literally *disabled* by
either of the three former of the causes, as by sickness.   The
terms of the statute of 1846—now § 58 of ch. 84, Gen. Sts.—are
in themselves ample to cover any kind of disability, from what-
ever cause arising.   If that had been our only statute for supply-
ing a substitute for a disabled collector, it is hardly conceivable
that it would be claimed that the present case does not come
within its operation, both on the score of the reason and the
terms of it.

That statute is not at contrariety with the provisions of the
statute prior thereto, now making §§ 53, 54, of ch. 84, Gen. Sts.
Those provisions are still left operative in the cases named, so
that the town can, if it sees fit, proceed to elect, notwithstanding
the selectmen should have made an appointment.   The two
statutes are not co-extensive as to subject-matter.   Section 58
provides for a case not embraced in §§ 53, 54, viz : disability by
sickness ; and while, by its terms, it embraces within the same
provision, cases of disability by the means named in the former
sections, it leaves the former sections operative as to the modes
and causes provided for in them.   The later act, § 58, supplements
the earlier statutes, §§ 53, 54, by providing an additional mode
of supplying a substitute for a collector who has become disabled
by removal, death, or guardianship—a substitute as much needed
in such cases of disability, as in case of disability by sickness—
while it makes provision for a case of disability not embraced in
the earlier statute.   The argument hardly seems in point, which

is deduced from the calling of the office *vacant* in § 54, in case of removal, death, or guardianship, as named in § 53, while in § 58 it is not so called. The effective fact in the cases in both §§ 53 and 58, is, that the collector has become disabled to further perform the duties of the office. Though in § 58 the office is not called *vacant*, the provisions made in it as to the powers and duties of the person appointed in place of the disabled collector, show that it is regarded not merely as suspended by the sickness, but as becoming in fact *vacant* when the request is made to the selectmen. For it is made their duty thereupon to proceed and find or make a substitute. And from the making of said request, every reason for an appointment to be made by the selectmen, exists with equal force as in cases of disability named in § 53.

It would seem, too, that the claim is not well grounded, that the expression, " disabled by sickness or otherwise," should be limited to lack of physical ability on account of some bodily ailment. Official disability may as well proceed from other causes as from sickness or bodily ailment, and the " or otherwise," following " by sickness," is ample to cover and embrace all causes of disability. *Disabled*, is the fact that produces the occasion for a substitute. The cause of being disabled is not important as constituting a reason or purpose of the provision for a substitute. It is demonstrated that in statutory language and contemplation, persons may be *disabled* from official service by the very causes named in § 53 ; for in ch. 15, § 21, is the expression, " by reason of non-acceptance, death, removal, insanity, or other *disability*." So that it would be entirely consonant with the legislative vocabulary and usage, to construe the " or otherwise," in § 58, ch. 84, as embracing just such causes as are treated as producing disability in said § 21, ch. 15.

Though we take notice of the irregularity in the pleadings of two distinct formal replications to a single plea, as no question has been made upon it in either court, we proceed to consider—

II. It is claimed that the list on which the tax was made out, is affected with illegality. Illegality in the list of the plaintiff, does not result from what passed between the plaintiff and the

87

lister, Davis, at the time the plaintiff gave in his list in writing. The paper thus given in, did not constitute the *assessment* named and meant by the statute, nor did the memorandum made by Mr. Davis on the book that he carried. This was only the getting together of the materials which were to be taken into consideration by the listers in making the assessment and completing the list of the plaintiff. Illegality in the list, if any there be, must be the result of some violation of, or failure to perform, some duty resting on the listers in making up the list of the plaintiff. It is not claimed that anything was illegally done, except as to the bank stock. The plaintiff was not assessed for money on hand, or for debts due, or for stock in trade or manufactures. All of the list that he gave in, except poll and bank stock, was wiped out by the debts owing by plaintiff. It is claimed that the bank stock should also have been excluded from the list by reason of such debts, and that the listers were in default of duty in this respect, in not having given the plaintiff the notice provided in ch. 83, § 27, for the hearing of persons who shall feel themselves aggrieved by the assessment made by them. A full and conclusive answer in this respect, is furnished by the same section, in the fact that it provides for such notice only in case the listers shall assess *"*for money on hand, debts due or to become due, stock in trade or manufactures "—and this is required, to the end that persons thus assessed, if aggrieved by such assessment, may be heard in respect thereto.

Bank stock does not fall within that provision. That is the subject of a distinct provision of the statute, ch. 61, § 42, Gen. Sts., act of 1865, No. 6, by which the amount returned by the cashier to the town clerk, is, by the listers, to be set in the list according to the requirements therein contained. The setting of bank stock in the list as thus required, is altogether a different matter from the assessing of a person for money on hand, debts due, stock in trade, &c.—all of which latter materials for making up a person's list, constitute subjects of inquiry and showing, in order to enable the listers to adjudicate the amount, if any, for which such person should be assessed. No such inquiry or showing or adjudication, is contemplated by the statute in respect to

bank stock; and this would be a good reason, if reason were needed, why bank stock was not embraced as a subject of the notice required to be given by said § 27.   It is, however, sufficient, without inquiring as to the reason, that bank stock is not embraced as subject-matter for the required notice.   Illegality in the plaintiff's list cannot have proceeded from the not giving of the notice in question.

As to debts owing by the plaintiff which might lawfully be off-set against his bank stock, it may be remarked that the statute does not require any notice to be given him by the listers.   That matter seems to be left without provision for any formal proceedings, to be moved by the claimant of the offset by application to the listers in that behalf.   Upon any thing shown or found in this case, there is no ground even for pretence or suggestion that the listers neglected or violated any official duty in that respect.   The matter was left open at the time the plaintiff gave in his list, with his memorandum of the amount he claimed he was owing.   It was for him to pursue the matter to a final consummation, if he saw fit.   He was apprized that he could have opportunity on a day and at a place named, to meet the listers with reference to any matter touching the making up of his list.   He voluntarily refrained from availing himself of it.   The difference of understanding between him and the lister, Davis, does not affect the list with illegality, for the ample reason, that it does not import any failure or violation of official duty on the part of the listers.   It seems needless to pursue the subject more in detail.

The "clerical error" named in the last point in plaintiff's brief, is not before us for correction.   If it were, the last clause in the findings stated in the exceptions, shows the matter according to the fact, and shows no fault in the judgment on this account.

Judgment affirmed.